CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

MAR 04 2009

JOHN F. CORCORAN, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 3:09CR00004 |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| BHAGUBHAI JAMNADAS PATEL, | ) | |
| | ) | |
| | ) | By: B. WAUGH CRIGLER |
| Defendant. | ) | U.S. MAGISTRATE JUDGE |

In accordance with the provisions of Title 28 U.S.C. § 636(b)(3), and upon the defendant's consent, this case was referred to the undersigned to conduct a plea hearing.

**DEFENDANT'S RESPONSES TO RULE 11 INQUIRY**

The defendant, having waived his right to presentment of charges before the Grand Jury, a single-count Information was filed charging the defendant with willfully, and for the purpose of commercial advantage and private financial gain, infringing the copyright of a copyrighted work by distributing during a 180-day period ten (10) or more copies of the copyrighted work which have a retail value of $2,500 or more, in violation of Title 17, United States Code, Section 506(a)(1)(A) and Title 18, United States Code, Section 2319(b)(1).

On February 25, 2009, a plea hearing was conducted before the undersigned. At the hearing, the defendant was placed under oath and testified that his full legal name is Bhagubhai Jamnadas Patel, that he was born in India on April 1, 1952, and that he holds a Bachelor of Science degree in Biology. The defendant stated that he can read, write, and understand the English language, and that he was fully aware of the nature of the charges against him and the consequence of pleading guilty to those charges. The defendant further testified that he was not under the influence of alcohol, medicine, or any drug, and that he had no physical or mental condition which impaired his ability

to understand the nature of the proceedings being held. The defendant's counsel stated that he had no reservations as to the defendant's competency to enter a plea of guilty or the voluntariness of his participation in negotiating a plea agreement.

The defendant testified that he had received a copy of the Information, and that he had fully discussed the charges therein and any defenses thereto, and his case in general, with his counsel. The defendant stated that he was pleading guilty of his own free will because he was, in fact, guilty of the offense charged. The defendant also stated that, apart from the terms of the Plea Agreement entered into with the government, which was filed with the court, no one had made any representations or promises to him for leniency or a lighter sentence. Moreover, no one had made promises, assurances, threats or coerced him in any way in an effort to induce his plea or his execution of the Plea Agreement. The defendant testified that he understood that Count One charges a felony, and if his plea is accepted, he will be adjudged guilty of that offense and be subject to exclusion or deportation from the United States.

The defendant acknowledged that the maximum statutory penalty for Count One is a $250,000 fine and/or imprisonment for a term of five years, together with a term of supervised release. The defendant was further informed that parole has been abolished, and that if he is sentenced to prison, he will not be released on parole, but on supervised release, a violation of which could result in additional incarceration. Finally, the defendant testified that he understood that he will be required to pay a special assessment of $100, he may face payment of restitution, and his assets may be subject to forfeiture.

The defendant was informed that under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued guidelines for judges to follow in determining the sentence in

a criminal case. The defendant was then informed that the Sentencing Guidelines are no longer mandatory, but the sentencing judge may apply them in an advisory fashion in determining a reasonable sentence. The defendant testified that he and his counsel had discussed how the Sentencing Guidelines might apply in his case. The defendant also testified that he understood that the court would not be able to determine the applicable guideline range, for advisory purposes, until after a presentence report has been prepared and both parties have been given an opportunity to challenge the reported facts and application of the Guidelines. The defendant stated that he understood that the eventual sentence imposed may be different from any estimate his attorney had given him, or any recommendation by the government, and that the court has the authority to impose a sentence that is either higher or lower than that called for by the Guidelines, so long as the sentence is not greater than the statutory maximum for the offense to which the defendant is pleading guilty.

The defendant stated that he understood that, contingent upon his acceptance of responsibility, continued cooperation in the sentencing process, and fulfillment of his duties under the Plea Agreement, the government would recommend a two-level (2) reduction under USSG § 3E1.1(a), and, if applicable, the government would move that he be given an additional one-level (1) reduction under USSG § 3E1.1(b). The defendant stated he knew that all matters pertaining to the Information were relevant conduct for purposes of sentencing. The defendant also stated he knew the government had agreed to recommend that he be sentenced at the low end of the applicable guideline range, and that he was aware that this merely was a recommendation, and that the court had the discretion to sentence him up to the maximum penalty under the law. The defendant acknowledged he understood that even should he fully cooperate with law enforcement, the government is under no obligation to file a motion for substantial assistance, and if the government

3

makes the motion, it is up to the court to determine how much of a departure, if any, should be made.

The defendant acknowledged he knew that any statements he makes may be used against him. The defendant stated he had agreed to waive the presence of counsel at any future contact with government personnel, and that such contact could occur without prior approval of counsel. However, the defendant understood that, should he request counsel during the contact, such contact would be suspended until counsel was present or agreed the contact could continue. The defendant also testified that he was waiving all rights under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of his case. The defendant also acknowledged his consent to the abandonment, official use and/or destruction of anything seized by law enforcement during the investigation of his case. The defendant confirmed he had agreed to pay restitution for all matters included in his relevant conduct, including but not limited to $79,020.00 to the Motion Picture Association of America, as set forth in the plea agreement. The defendant agreed to pay any restitution due pursuant to 18 U.S.C. §§ 3663 and/or 3663A. The defendant acknowledged his agreement to make good faith efforts toward payment of any mandatory fines, assessments and restitution imposed, and that he would submit a financial information, if called upon to do so, and would not convey anything of value without authorization from the government. The defendant understood that, pursuant to 18 U.S.C. §§ 3613 and 3664(m), whatever monetary penalties imposed by the Court would be due immediately and subject to immediate enforcement. The defendant acknowledged that his agreement required full participation in inmate employment under any available or recommended programs operated by the Bureau of Prisons, regardless of whether the Court specifically directs participation or imposes a schedule of

4

payments. The defendant acknowledged that he was waiving his right to have a jury determine beyond a reasonable doubt the facts alleged in the Information, including any facts related to sentencing. The defendant testified that he understood that he had the right to a trial by a jury, in addition to the following rights, which will be waived or given up if his guilty plea is accepted:

1. The right to plead not guilty and persist in that plea;
2. The right to a speedy and public jury trial;
3. The right to assistance of counsel at that trial and in any subsequent appeal;
4. The right to remain silent at trial;
5. The right to testify at trial;
6. The right to confront and cross-examine witnesses called by the government;
7. The right to present evidence and witnesses in his own behalf;
8. The right to compulsory process of the court;
9. The right to compel the attendance of witnesses at trial;
10. The right to be presumed innocent;
11. The right to a unanimous guilty verdict; and
12. The right to appeal a guilty verdict.

The defendant testified that he understood that under the terms of the agreement he was waiving rights to appeal or collaterally attack his conviction or sentence. The defendant stated he was aware that the government had retained its rights to appeal. The defendant acknowledged he has no rights conferred upon citizens of the United States; thus, he cannot be deprived of such rights upon conviction for a felony.[1]

The defendant stated that he was fully satisfied with the advice and representation given to him in this case by his counsel, and that counsel's representation had been effective. The defendant testified that he understood the possible consequences of his plea, and he asked the court to accept his plea of guilty to Count One of the Information.

---

[1] The defendant testified he is not a legal citizen of the United States and is present in the United States on a business visa.

5

## THE GOVERNMENT'S EVIDENCE

The defendant waived his right to have the government's Factual Summary read in open court. The Factual Summary having been filed in open court, and the evidence presented therein regarding the offense charged is as follows: If this case had gone to trial, the United States would have presented evidence that the defendant, BHAGUBHAI Jamnadas Patel ("Patel") was the president of Dharma Enterprises which owns four businesses in the Central Virginia area: Sunshine Supermarket, 827 Cherry Avenue, Charlottesville, VA; Pic N' Pac, 507 Stewart Street, Charlottesville, Virginia; Pic N' Pac, 12805 Spotswood Trail, Ruckersville, Virginia; and Oakhill Deli N' Grocery, 667 Country Green Road, Charlottesville, Virginia.

In August of 2006, the Federal Bureau of Investigation ("FBI") was notified by a confidential informant ("Informant") that Patel was involved in selling pirated DVDs and CDs. As part of the FBI's subsequent investigation, the Informant agreed to wear a recording device and was able to capture Patel's supplier delivering fifty-four (54) pirated DVDs to the Sunshine Supermarket. Shortly thereafter, an undercover officer purchased a pirated DVD from Pic N' Pac on Stewart Street.

On May 22, 2007, Andy Brogan, Regional Director of Investigations for the Motion Picture Association of America ("MPAA") reported that the fifty-four (54) pirated DVDs delivered to the Sunshine Supermarket and the one purchased at the Pic N' Pac had not been released on DVD and that neither Patel or his supplier were authorized to sell them.

On July 2, 2007, the FBI executed a search warrant at the Pic N' Pac on Stewart Street. The agents also received consent to search the three other stores operated by Patel. The search resulted in the seizure of 2259 pirated DVDs and CDs. Robert Harnett, a contract employee of MPAA reviewed 10% of the seized DVDs and determined that the movies contained data, were counterfeit, and were

6

not licensed or authorized by the trademark holder.

On the same date that the search warrant was executed, Patel admitted to law enforcement that he had been approached by his supplier a year and a half prior with the opportunity to purchase some pirated DVDs. Patel admitted to purchasing them from his supplier for approximately $3.50 per item and selling them for $10.00 each. Patel's supplier was also interviewed and admitted to being the supplier of the pirated DVDs and CDs to the stores owned by Patel.

A breakdown of the estimated value of Patel's counterfeit DVD/CD business is as follows:

| | | |
|---|---|---|
| DVD's seized examined from Pic N' Pac and Sunshine Supermarket | 2259 x $10 | $22,590.00 |
| DVD's received from source | 183 x $10 | $ 1,830.00 |
| Historical from Pic N'Pac 78 weeks x 25/week = 1950 | 1950 x $10 | $19,500.00 |
| Historical from Pic N'Pac Oakhill Deli and Sunshine Supermarket 78 weeks x 15/wk x 3 stores | 1170 x $10 | $35,100.00 |
| TOTAL | | $79,020.00 |

All of above noted activity occurred within the Western Judicial District of Virginia.

**FINDINGS OF FACT**

Based on the evidence presented at the plea hearing, the undersigned now submits the following formal findings of fact, conclusions and recommendations:

1. The defendant is fully competent and capable of entering an informed plea;

7

2. The defendant is aware of the nature of the charges and the consequences of his plea;

3. The defendant knowingly and voluntarily entered a plea of guilty to Count One of the Information; and

4. The evidence presents an independent basis in fact containing each of the essential elements of the offense to which the defendant is pleading guilty.

**RECOMMENDED DISPOSITION**

Based upon the above findings of fact, the undersigned RECOMMENDS that the court accept the defendant's plea of guilty to Count One of the Information and adjudge him guilty of that offense. The undersigned DIRECTS that a presentence report be prepared. A sentencing hearing hereby is scheduled for May 28, 2009 at 10:00 a.m. before the presiding District Judge in Charlottesville.

**NOTICE TO PARTIES**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C): Within ten days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. The presiding District Judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. The presiding District Judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the undersigned. The judge may also receive further evidence or recommit the matter to the undersigned with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is

directed to transmit the record in this matter to the presiding United States District Judge.

The Clerk is hereby directed to send certified copies of this Report and Recommendation to all counsel of record.

ENTERED: _____
United States Magistrate Judge

3-4-2009
Date